**BOARD OF EDUCATION OF CALLOWAY COUNTY SCHOOL DISTRICT, Appellant,**

v.

**J.D. WILLIAMS (former) Sheriff of Calloway County, Appellee.**

No. 95–SC–299–DG.

Supreme Court of Kentucky.

Sept. 26, 1996.

Robert L. Chenoweth, Frankfort, Richard W. Jones, Hurt & Jones, Murray, for Appellant.

Stephen C. Sanders, Murray, for Appellee.

Vernon Wayne Young, Frankfort, for Amicus Curiae, Kentucky Association of School Administrators.

Kevin M. Noland, Frankfort, for Amicus Curiae, Kentucky Department of Education.

J. Stephen Kirby, Frankfort, for Amicus Curiae, Kentucky School Boards Association.

Arthur L. Brooks, Brooks, Coffman and Fitzpatrick, Lexington, Joellen S. McComb, Lexington, for Amicus Curiae, Kentucky Education Association.

Annette C. Karem, Williams & Wagoner, Louisville, for Amicus Curiae, Kentucky Association of Counties, Kentucky County Judge Executive Association, Inc.

WINTERSHEIMER, Justice.

This appeal is from a decision of the Court of Appeals which reversed the judgment of the circuit court determining the reasonable expenses incurred by the Sheriff in collecting the ad valorem taxes for the Calloway County School District.

The issue is whether the allocation of the costs of collection of school taxes based on a percentage of the revenue collected violates Section 184 of the Kentucky Constitution. The specific question is the method or formula to be used for determining the costs of the Sheriff in collecting the school taxes.

A complaint was filed by the Board of Education after a disagreement arose with the now former sheriff of Calloway County regarding the proper procedure for the disbursement of school district tax money upon collection and the proper fee due to the Sheriff for having collected the school taxes. The Sheriff had been withholding four (4) percent of the total amount of taxes collected on behalf of the school district and allegedly forwarding the balance to the school district without documenting his expenses to justify his fee. The Board and the Sheriff were able to agree as to the direct and indirect cost of the collection of all taxes for all taxing districts by the sheriff. The Sheriff collected the taxes for eight other taxing districts in addition to the Calloway County School District.

The school board seeks to have this Court adopt a new formula for the allocation of the costs connected to the collection of taxes and reject the longstanding method of equitable allocation of costs as approved by prior decisions of this Court.

The circuit judge appointed a special commissioner who was directed to consider the actual and reasonable costs of collection by the Sheriff of school district taxes based on the twelve and one-half (12½) percent allocation of expenses method. A special judge of the circuit court adopted the report of the special commissioner and entered judgment for the Board of Education ordering the Sheriff to reimburse the school district $77,-824.00. The Court of Appeals reversed and this Court accepted discretionary review.

The Board of Education argues that the Court of Appeals was erroneous as a matter of law for having overlooked Section 184 of the Kentucky Constitution, viewed in the light of the Kentucky Education Reform Act of 1990, in adopting an artificial and insupportable formula for calculating the reasonable expenses incurred by a sheriff in collecting school taxes. The Board contends that the formula applied by the Court of Appeals

to calculate the reasonable cost of collection is directly contrary to the mandate of this Court in *Rose v. Council for Better Education, Inc.*, Ky., 790 S.W.2d 186 (1989), which resulted in the Kentucky Education Reform Act.

The former Sheriff responds by stating that the parties at trial, with the assistance of their Certified Public Accountant, determined and agreed on substantially the entire amount of the direct and indirect costs of tax collection. The Sheriff argues that the only matter before this Court is the proper, modern and equitable manner and method of allocating total costs of collection for all taxes to all taxing districts among the various taxing authorities. He claims that the Board of Education is advocating that this Court overrule established precedent by reinterpreting Section 184 of the Kentucky Constitution.

This Court affirms the decision of the Court of Appeals because it correctly determined that the circuit court committed reversible error by finding that the Board of Education's share of the actual and reasonable costs of the Sheriff in collecting all ad valorem taxes in Calloway County should be only 12½ percent of the total costs to the Sheriff of all collections.

*Board of Education of Lawrence County v. Workman*, Ky., 256 S.W.2d 528 (1953), established a general formula in computing the cost of collection. In essence, the ratio of school tax collections to total tax collections is to be first determined and then this ratio is to be applied to the amount of compensation for personnel services allocated to the cost of collecting all taxes which will produce the amount allocable to school tax collection. The same ratio has been employed and relied upon whenever this Court has had to consider the proper method of calculating the fees of the Sheriff. *See Larue County Board of Education v. Scott*, Ky., 296 S.W.2d 682 (1956). *Board of Education of Carter County v. Chester Greenhill*, Ky., 291 S.W.2d 36 (1956); *Felty v. Gay*, Ky., 284 S.W.2d 81 (1955); *McClain v. Board of Education of Spencer County*, Ky., 275 S.W.2d 795 (1955); *Hager v. McConathy*, Ky., 269 S.W.2d 725 (1954); *Board of Education of Caldwell County v. Lewis*, Ky., 269 S.W.2d 193 (1954).

*Workman, supra,* recognized that tax collection costs may differ from year to year. Costs may change because of external factors such as utility charges, postage, rental, paper costs, salaries, travel, telephone and utility bills, computer charges and printing. We understand that such costs in no way diminish the constitutional command that school taxes must be appropriated to the common schools and no other purpose. Ky. Const. § 184.

These basic principles are not changed by the adoption of the Kentucky Education Reform Act of 1990. In response to *Rose v. Council for Better Education, Inc., supra,* the General Assembly enacted KRS 160.500. The legislature did not direct that the tax collector divide the total cost of collection by the number of taxing districts but only that the tax collector shall be entitled to a fee equal to the expense, but not less than one-half of one percent and not to exceed the rate of four percent for the collection of school taxes. The General Assembly recognized that the cost of collection may change depending on the changes in ad valorem taxes. The legislature chose to place a limit on the fee for the collection of such taxes by the sheriff.

In this case, the Board of Education asserts that it should not be required to pay more of the costs of collection than any other taxing district merely because it receives a larger share of the total tax collection because it costs no more to collect $1 than it does to collect $1,000. Such reasoning is faulty because allocating liability among all taxing districts for the total costs of collection is clearly unfair because it places a disproportionately high share of the sheriff's costs of collection on other taxing districts which receive less tax revenue. We are not persuaded that the Board of Education has presented any valid legal reason why it should not be required to pay the equitably allocated costs of collection for all the money it receives. *Benson v. Board of Education of Bellevue*, Ky.App., 748 S.W.2d 156 (1988), relied upon by the circuit court, involved an attempt to claim the maximum fee allowed by statute without regard to actual expense and is not applicable here.

It cannot be said that as taxes become larger, there are any directly proportional higher costs of collection. Accounting considerations would indicate that regard must be given toward the assignment of costs based on responsibility and control. As noted in *Wells v. Board of Education of Menifee County*, Ky., 244 S.W.2d 160 (1951), the responsibility of the sheriff is certainly affected by the amount of money collected and this fact must be taken into consideration in allocating the costs of collection and establishing the proper ratios between the amounts collected in multiple taxing counties.

In an age of accountability the use of all public funds should be entirely open so that the taxpayers know the true costs of any government service. The taxpayer should not be called upon to surreptitiously subsidize any unit of government at the expense of other legitimate government functions without appropriate legislative action. No mechanical formula will automatically succeed, but the ratio previously authorized is fair and should continue to be employed and applied in this case.

*Rose v. Council for Better Education* and the Kentucky Education Reform Act do not require any change in the allocation of costs for the collection of school taxes. If the General Assembly wishes to change the method for allocation of the costs of collection, then such changes should be legislative amendments pursuant to KRS 160.500 and not judicially imposed.

The applicable statutory provision which provides that school taxes shall be collected by the sheriff for the county school district and that the tax collector shall be entitled to a fee equal to the expense should not be abandoned.

. In no sense does this equitable statutory provision interfere with Section 184 which reads that "the interests and dividends of said fund, together with any sum which may be produced by taxation or otherwise for purposes of common school education, shall be appropriated to the common schools and to no other purpose." The long standing ratio approved by the courts should be followed in order to continue to equitably allocate the costs of collection.

Some have argued that this Court is required as a result of *Rose, supra,* to adopt a rather over simplistic manner of allocating costs of collection which would result in some taxing districts receiving insufficient funds to pay for their share of the tax collection effort. In *Rose,* this Court used the term "ad valorem" which means according to value. The equitable assessment according to value as recognized by this Court and used by the General Assembly is also applicable to the cost incurred in collecting taxes. The more taxes collected, the higher percentage of the cost of collection a collecting entity should bear. Those who urge otherwise have failed to read all of the language of *Rose* which states that the General Assembly must provide adequate funding. The General Assembly has enacted KRS 160.500. That legislation did not direct that the tax collector divide total costs of collection by the number of taxing districts, but only that the tax collector "shall be limited to a fee equal to the expense, but not less than 1.5 percent and not to exceed 4 percent for the collection of school taxes." The fact that the General Assembly limited the fees for the collection of taxes by the Sheriff indicated that it realized that as ad valorem taxes increase, so must the cost of collection.

It should be noted that the Sheriff in this case has not indicated that as taxes become larger there is a directly proportional higher cost of collection. If the amount of taxes collected doubles, the cost of collecting the tax doesn't automatically double. By way of comparison, we might note that a public utility consumption charged to the Board of Education is not based on the number of consumers, but on the amount of consumption. The mandate of KERA did not disregard the relative values and equitable percentage in favor of directing a pure per capita assessment. The burden of tax collection cannot be simply divided by the number of agencies who are entitled to the taxes. To do so would result in many taxing districts, in the absence of a percentage allocation, being unable to collect enough taxes to pay for the costs of collection. This obviously produces an absurd result. The decision of this Court in *Rose* and the enactment of KERA by the

legislature do not change the system of the fair allocation of the costs of tax collection.

It is clear that the legislature has recognized that there is a valid concern in regard to the amount of collections and has authorized a limit on such collections. If there is to be a change in that limit or the method of approaching that limit, then that change should better come from the General Assembly than from the courts.

The formula is a guide and each case should be decided on its own facts. The appropriate use of the formula guards against the subjective, undefined and undisciplined approach to fair allocation of the cost of collection. In this situation, the application of the formula has been thoughtfully and professionally considered and is not merely applied in a mechanical or routine manner. The charges of windfall to the Sheriff is a fear that has failed to materialize, and if it is valid, it should be considered by the General Assembly for correction by adjusting the limit on collections or by otherwise amending KRS 160.500.

The decision of the Court of Appeals is affirmed.

BAKER, GRAVES, LAMBERT and WINTERSHEIMER, JJ., concur.

KING, J., dissents by separate opinion in which STEPHENS, C.J., and STUMBO, J., join.

KING, Justice, dissenting.

Respectfully, I dissent.

The majority's "equitable" decision that the cost of collecting school taxes must be based on the proportion of school taxes to total taxes collected ignores our state constitution as well as statutes enacted by the Kentucky General Assembly. Section 184 of the Kentucky Constitution provides: "any sum which may be produced by taxation or otherwise for purposes of common school education, shall be appropriated to the common schools and to no other purpose." Section 180 of the Constitution requires every tax to be devoted to the purpose for which the tax was levied and collected. KRS 160.500(1) limits the sheriff's fees for collect-

ing school revenues to "a fee equal to his expense," "which fee may be charged *only* for collecting or receiving school taxes or school funds received from the local school levy." (Emphasis added.)

Although the majority opinion states that the statutory provision "should not be abandoned," by treating KRS 160.500(1) as an "equitable statutory provision" despite the clear and unambiguous language of the statute, the majority is abandoning the provision in deed if not in word. The sheriff's fee is statutorily set at the *actual expense* of collecting *school taxes*. That statute and its clear meaning is in consonance with Sections 180 and 184 of the Constitution. Paying the sheriff more than the actual cost of collecting school taxes is using money "appropriated to the common schools" for some "other purpose" in violation of the Constitution and the statute. Neither the Constitution or KRS 160.500(1) entitles the sheriff to a "reasonable fee" or to the "equitable allocation of costs" which the majority opinion attempts to provide.

The majority's concern for other taxing districts is misdirected. Those taxing districts are not the issue before us. Our decision here will not affect the amount of costs other taxing districts pay to the sheriff. Other taxing districts are governed by separate statutes and the amount they pay to the sheriff is not tied to how much the sheriff collects from the school district. *See* KRS 75.040(3); KRS 134.290; KRS 178.230; and KRS 262.770. Whether those statutes provide the sheriff with costs greater than, less than, or equal to the sheriff's actual costs of collecting those taxes is not part of the record and is immaterial to the matter before us. Certainly there is nothing in the record supporting the majority's conclusion that the trial court's determination of costs to be paid to the sheriff unfairly "places a disproportionately high share of the sheriff's costs of collection on other taxing districts which receive less tax revenue."

The issue before us is not the equitable assignment of the costs of tax collection among various taxing districts or the perceived fairness of such a distribution. Rather, the issue is the methodology to be utilized

in implementing the clear and unambiguous provisions of our Constitution and statutes by finding a statutorily and constitutionally appropriate method to ascertain the actual cost of collecting school taxes, for which costs the school district must expend school funds. Section 184 of our Constitution and KRS 160.500 pertain only to school taxes and not to other taxing districts.

The majority opinion relies upon decisions from the 1950's which utilized a formula calculated to determine the cost of collection in those particular cases. These fact-intensive cases stressed that the formula was a guide and each case should be decided upon its own particular facts. For example, in *Board of Education of Lawrence County v. Workman,* Ky., 256 S.W.2d 528, 530 (1953), we recognized "that each case of this type must be decided upon the particular facts involved." We went on to note that the formula we used "has not been followed strictly in every case, and is not intended to be applied as an exact mathematical rule." In addition, it was not until 1976, long after the decisions relied upon in the majority opinion, that the General Assembly in KRS 160.500(1) set the sheriff's fee "equal to his expense."

Despite the fact that our holding was not intended to be applied as a rigid rule and despite our determination that the *Workman* method of computation was "certainly not the only possible one," *Board of Education of Carter County v. Greenhill,* Ky., 291 S.W.2d 36, 39 (1956), the majority has apparently determined that the *Workman* formula has indeed become a mathematical rule to be mechanically followed in every case.

Applying the *Workman* formula here obscures constitutional principles and the clear and unambiguous language of the statute by equating the sheriff's *cost* of collecting school taxes with the *value* of the sheriff's services. The *cost* of collecting school taxes is the amount expended by the sheriff's office in performance of its school tax collection duties. The *value* of collecting school taxes is "its worth consisting in the power of purchasing other objects." *Blacks Law Dictionary* (5th ed., 1979). Of course, as the value of the school taxes increase the *value* of the sheriff's services to the school district, as

measured by the amount of taxes collected, increases proportionally. However, the sheriff has not represented, nor is there any evidence in the record, that the *cost* of collecting taxes is proportional to the amount of taxes collected or that as taxes increase there is a corresponding proportional increase in the *cost* of collecting taxes. Nevertheless, the majority opinion requires a cost payment method which proportionately increases costs as taxes increase. The only factor that should be of any importance, whether the school tax doubles or is cut in half, is the actual cost, direct and indirect, of collecting the school tax.

The present-day inadequacy of the forty-year old formula and the resulting constitutional violation is clearly illustrated by the situation presented here. In response to our decision in *Rose v. Council for Better Education,* Ky., 790 S.W.2d 186 (1989), the General Assembly enacted KERA. To create adequate school revenues, the legislature mandated a minimum tax rate, KRS 160.470(12). Many boards of education, including Calloway County's, were required to raise taxes. As a result of the tax increase and utilizing the formula set forth in the majority opinion, the sheriff's "costs" for collecting school taxes increased in one year from approximately $40,000 to more than $70,000. The sheriff has failed to show any objective justification for this increase in costs. In fact, the sheriff has not even claimed that his costs for collecting the school taxes, or taxes in general, increased more than $30,000 from one year to the next. The fact that the Board of Education must pay more to the sheriff has not decreased payments by any other taxing district. Thus, by allowing the sheriff to utilize this formula, the Court has permitted the sheriff to become the beneficiary of a windfall of public funds meant for the school district. In enacting KRS 160.470(12), the General Assembly's intent was not to provide a bonanza for sheriffs throughout the Commonwealth but was to provide much needed tax dollars for education.

"The history of our decisions indicates this Court has jealously guarded school funds from diversion, even for laudable purposes."

*Board of Education of Madison County v. Wagers,* Ky., 239 S.W.2d 48, 49 (1951). As we stated in *Rose, supra,* at 211:

> No tax proceeds have a more important position or purpose than those for education in the grand scheme of our government. The importance of common schools and the education they provide Kentucky's children cannot be overemphasized or overstated.

Rote application of the *Workman* formula clearly frustrates the General Assembly's intent to provide money for education. We must jealously guard these tax dollars.

The trial court found that, at the higher post-KERA tax rate, the accepted method for determining the sheriff's costs for collecting school taxes produces an artificially high figure for the sheriff's costs. The tax collection fee is so out of proportion to actual costs for collecting school taxes that it diverts school funds to the sheriff's office in clear violation of § 184 of the Kentucky Constitution and KRS 160.500(1). Thus, the enactment of higher taxes after KERA and the resultant jump in the sheriff's claimed "costs" of collection make clear that the old valuation method no longer provides an adequate mechanism to determine the sheriff's costs of collecting school taxes. When school taxes were lower, the *Workman* formula, which equated the cost of the sheriff's services with the value of the sheriff's services, may have provided an adequate mechanism to determine the sheriff's actual costs. However, the present-day application of the forty-year old formula results in a constitutionally impermissible invasion of public funds exclusively reserved for the education of the children of our Commonwealth.

The Board of Education does not ask us to adopt a formula mirroring the trial court's method of determining the Calloway County Sheriff's actual expenses in collecting school taxes. Rather, the Board requests that we reexamine our forty-year old formula, which was never meant as in inflexible rule to be applied in every case regardless of the circumstances.

We should reject the dogmatic use of rigid formulas. Experience teaches us that mechanical formulas rarely succeed. The majority opinion acknowledges that, "No mechanical formula will automatically succeed." Forty years ago, we recognized that "the keeping of more adequate and detailed records by the sheriffs might eliminate the necessity of applying any formula." *Workman, supra,* at 530. Such a time has come. The statutory standard is cost. The Calloway County Circuit Court should conduct an evidentiary hearing to determine the *actual cost* incurred by the sheriff in collecting school taxes and that should be the amount the Board of Education must pay out of funds "appropriated to the common schools."

STEPHENS, C.J., and STUMBO, J., join this dissent.